Huntington Ingalls Industries at all. 21-13673. It looks like we've got four people who are going to be arguing today and sharing some time. It looks like, McKay, Neumeister, you're going to have seven minutes. Okay. And you may proceed when you're ready. McKay, Meister, on behalf of the United States. As amicus curiae supporting. The United States is participating in this key tam case under the False Claims Act solely to address two errors that the district court made in dismissing the operative complaint for the breach of the operative complaint. under Rule 9B. Can I ask you a question sort of right out of the gate? So we have, you're arguing right now on behalf of the relator. The Department of Justice did not intervene. Correct. And the district court has questioned the Justice Department regarding how you fit into this case and said, told the government you either need to get in or get out. Are you in or are you out? Your Honor, we're here participating as amicus, which is something that the Department of Justice does do on appeal on occasion in support of a relator. We didn't intervene in this case, but it's the department's. It's the department's prerogative. The United States prerogative to monitor these cases, given that they are brought in the name of the United States. And we frequently participate on appeal, even if we have not intervened in a case where there are issues implicated that the department and the government has an interest in. I'll note that this court noted in the Atkins case at note 17, there are any number of reasons why the government declines to intervene in key cases. And there's no reason to draw any inferences from that. Are you legally allowed to share claims documents with relators if you don't intervene? So the government is able to decide in cases brought by relators whether it wants to share information, what it might want to share with them. But the bare fact that the government can do that doesn't provide any reason to create a pre-complaint discovery obligation in these cases. We're just at the pleading stage in this case. There's no reason to require relators to attach evidence to a complaint at this stage. And in fact, that would be a very dangerous thing to do because it would undermine the way that the FCA process is supposed to function and potentially deter relators from bringing forth claims if they're subject to onerous pleading requirements and discovery burdens before they can even plead a sufficient complaint. If the Department of Justice had intervened and we were applying the heightened fraud standard that we apply in these types of cases, the Department of Justice would have included more specific information about the claims because surely the Department of Justice actually has this information. Why are we holding a relator to a lower burden? Because the government won't give that information to the relator. We're not asking the court to hold the relator to a lower burden, Your Honor. We think that the same requirements apply under 9b to all of these cases. It's just that some relators might have this information. The government might have identified this information if it brings a suit. But having all those specifics isn't necessary to satisfy 9b at this stage. And if you look at the purpose of this requirement, the indicia of reliability requirement, it's clear that it can be satisfied even without this specific information. Can you explain how your participation in this case is consistent with your brief in Bethany Hospice to the Supreme Court asserting that our precedent allows for enough of a case-by-case analysis? Yes, Your Honor. It is consistent with our position here. We think that this court's precedents do not mandate only two exclusive means of satisfying the indicia of reliability requirement. We think that the cases before this court often show that relators are trying to satisfy that requirement through two kinds of allegations, details of specific bills or personal knowledge of billing. And although those are ways that they often try to satisfy the requirement, those are by no means the only possible way of satisfying it. Our position in Bethany Hospice was that the circuits are essentially converging on a flexible approach to 9b in this context. Not all circuits frame their test exactly identically, but we think that they are moving in the direction of that standard and that this court's precedents do fit within that mold. So would you be satisfied if we ruled for the appellees but held that there are conceivably other routes to pleading False Claims Act liability besides producing a specific claim or a relator with personal knowledge of a specific claim? I think we largely would, Your Honor. I'm not exactly sure what ruling for the appellees would look like in that context, but our main interest here is in trying to correct the district court's errors in saying that there were only two ways of doing this. We want the court to emphasize that the indicia of reliability standard is the standard and that just like 9b in general, it is a flexible, nuanced, case-specific standard that does not have these bright line rules. It's not a box-checking exercise where there's only one of two ways to satisfy it. A court has to look holistically at all the allegations in a particular complaint and also look at the context in which the claims are arising and determine whether there is enough to provide the indicia that a claim has been submitted as a result of that fraud. So if the court would explain that, then that would be satisfying our interest here in making sure that the rigid rule applied by the district court is rejected. I had a similar question. You say a couple of times in your briefing whether or not the Eleventh Circuit decisions are correct. I was kind of reading in between the lines that maybe you don't think the Eleventh Circuit law is correct. Well, Your Honor, we think that this court's decisions are sometimes a little unclear on exactly how strict the standard is that's being applied. But we think that the correct standard is that there has to be reliable indicia from factual allegations that enable the court to draw the strong inference that claims have been submitted as a result of that scheme. And we think that this court's cases fit within that standard because they explain that it is supposed to be a case-by-case approach. It's supposed to be nuanced and flexible and that, as the court explained in Claussen, the question is really, even if you apply an underlying scheme, have you actually shown enough to connect that scheme to the submission of a claim? And we think that any different kinds of allegations can potentially provide that indicia that a scheme has, in fact, come to fruition. I hate to be the one always holding people up. I was kind of inferring also that perhaps the reason the government didn't get in was you weren't willing to allege knowledge of the fraud by EB or NNS. That's a little bit of a different issue, but it does seem to me that the indicia of reliability and the interest in QI-TAM cases in general in reliability plugs into that part of this as well. Does the government have a position on the sufficiency of the complaint to allege knowledge by EB and NNS? Not for purposes of this appeal, Your Honor. Here we're only participating as to the question of what is required to satisfy 9B with respect to the submission of a claim. And here we're talking about a submission of a claim that covers nonconforming parts. The questions of knowledge and falsity are things that the district court hasn't yet resolved and that the government is not taking a position and participating on in this case. I just have a follow-up question on that. I think, as I read your brief, and maybe I was over-reading it, it suggested that perhaps you were persuaded by the knowledge and falsity arguments, but that if we were, that we should remand the district court to consider those rather than deciding ourselves. Why does the United States think that the district court should decide that in the first instance rather than this court? Your Honor, the district court simply hasn't had a chance to fully resolve those questions, and so it's standard practice where that hasn't happened, that the district court often is given a chance to do that in the first instance. Obviously, it's the court's prerogative. If it thinks it has an alternate basis to affirm, the court is obviously able to do that. But it's our position that the district court hasn't resolved it yet. We aren't taking a position on the merits for purposes of this appeal. But ultimately, what we're really interested in is rejecting the district court's 9B ruling with respect to the submission of claims, and that's why we're here participating. And whatever course the court decides to take here, we would urge it to reject the district court's application of a rigid rule and make clear that there aren't just two ways to satisfy indicative reliability. Any variety of allegations might suffice. It's a holistic, case-specific inquiry. Thank you. Thank you, Your Honor. Ms. Verkamp, you have six minutes, and you're going to reserve two for rebuttal. Yes, Your Honor. May it please the court, my name is Jennifer Verkamp on behalf of Appellants 84 Partners. The complaint, or the leader's complaint, follows the guidance of the court's recent decision in Bethany Hospice that when a complaint alleges violations of the False Claims Act based on reliable indicia, rather than attaching false claims to the complaint, it should be accompanied by an explanation of how a relater's access to information translates to a reliable basis for their assertion that there is an existence of a claim. Simply put, is there a reliable basis in the case that the fraud allegations that are alleged actually occurred or came to fruition? Relater's complaint does this in three ways. The first way is through information provided by the Navy, identifying specific nonconforming parts installed on submarines as backed up by congressional reports and public reports of nonconforming parts installed on submarines, coupled with the information from the Navy in which it determined it paid for the nonconforming parts on the submarines. The second way relaters allege a reliable basis that claims exist is through relater's knowledge. Relater consists of three members. The first two members, Mr. and Mrs. Skobik, worked on the parts at issue that were included on EB and NNS purchase orders that were paid for by the United States. And the third whistleblower, Mr. Schilke, worked at EB. He worked at EB during the point of EB's investigations of the government's inquiries of this case and well knew that EB had readily identified nonconforming parts sitting in its stores ready for installation on submarines and already installed on submarines. And the third way is through relater's access to documents, quality documents and purchase order documents, in which relaters were able to specifically track the nonconforming parts that they had recorded while working at New Flow to the endpoint of shipment and acceptance by EB and NNS on specific dates alleged in Appendix A of the second amended complaint and thus paid for under the Virginia class contracts. For purposes of evaluating that, context matters, as this court has held, because relaters also allege that the specific payment mechanisms under the Virginia class contracts and that they're relevant to why that's a reliable basis. And the reason is this. Payment for those parts are made in real time, not after they're installed in submarines. Rather, EB submits progress payment requests for all the costs actually incurred on contract, on its procurement of supplies, of supplies from suppliers, including the New Flow made parts. What that means is that the point of acceptance, the shipment and acceptance dates in Appendix A, those were incurred costs on the progress payments and already paid for by the United States. So the relevant date is, of course, includes installation on submarines, but also once they accept it and it's in their stocks, it's the property of the United States and has been paid for by the United States, which is another reason, a relevant context for why the government's conclusions are important here. Do you think that a hundred percent chance, which I think is what you're outlining, is different than, say, a probability? I'm sorry, I just didn't hear the first part. Do you think a hundred percent chance that the government paid for these items is different than a high probability that the government paid for these items from the perspective of demonstrating that a false claim was presented? For the purposes of 9B, I think we do not allege probabilities, and I do think that there's a difference. I think under this circuit standards where the relator alleges a scheme and says, some or all may have been included in claims or claims must have been submitted, it's not been held to be sufficient. But here what we say is that every single part that has been shipped and accepted by EBN at NNS was billed to the United States, and it's much more like your case in United States ex-Ral Walker, because there there was a nurse practitioner who had participated in claims which she believed were billed wrong and had a conversation with her manager, and her manager said, we billed all these claims the same way. And that information from her manager that all the claims were billed the same way was deemed sufficient. That's what these allegations are more like, and another reason for that is She knew that false claims were submitted. I guess one of my questions is, how do I know that EB, and especially NNS, if NNS is involved with the parts that actually got installed, how do we know that they weren't victims of New Flow's fraud instead of participants in it? I mean, Mr. Schilke knows that it was discussed one time, but he doesn't know what happened after the discussion. He really doesn't know whether the parts that wound up on the ships were known by EB or NNS to be defective when they were provided to the government. One question, and I think you mean Mr. Skobik who worked at New Flow. Mr. Schilke worked at EB. Schilke is the one. Certainly the Skobik people don't know what happened at EB or NNS, so I do mean Schilke. Schilke knew a little bit about what went on at EB, but he doesn't know about what happened after his discussion and whether the defective parts were fixed to the extent identified by EB or NNS. He doesn't know whether the parts that made it into the submarine were known by EB or NNS to be defective. We actually, Your Honor, allege the opposite. In paragraph 451, we allege that Mr. Schilke did know that EB knew that nonconforming parts, and we list the specific examples, were installed on submarines because he was present for meetings regarding their investigation of these very allegations. But I think what you're getting at, I believe, is is there a chance that New Flow, the supplier, hid all these defects and that EB and NNS did not know about it from the point of hiding the defects to installation on the submarine. And what I would say to that is that, and I hope it's okay that I'm answering a question despite being out of time, is that we do allege that knowledge specifically, although it's not required to be. But you don't allege how he knew it. We do. So under the False Claims Act, they can have actual knowledge or reckless disregard. And what we allege is that time after time, parts with these specific nonconformances, including the unauthorized weld repairs at issue, were brought to their attention, and they violated material quality control standards to ignore those, to accept those parts, to not do systemic analysis, as required by those very demanding standards, to go look at the supplier and ensure, as is their non-delegable duty, that they were within control. So not once after finding a weld repair, issuing the type of systemic quality notification that would alert the government that this was a problem over and over again, not once going on site to the facility and doing an audit of those repairs. In addition, I would note at the very same time that this, actually prior to this going on, there was another case with another supplier in which they knew that there were unauthorized weld repairs that were undocumented. That was the subject of a False Claims Act case. And at the very same time that that case was resolving, they were qualifying this supplier without doing the proper checks to inspect itself and not doing the type of on-site auditing over and over after each defect over a period of years to comply with their material requirements of quality control. And all those details are all pled in a timeline in a complaint, which we assert satisfies the False Claims Act knowledge standard, particularly when those knowledge standards are not required to be sufficient under Rule 9. I have one other. No, no. Okay. I have one other question if I may. As a relator's attorney, do you think that there could be employment consequences for an employee who took billing records for purposes of a lawsuit? There often are. So I can speak from my experience that often defendants will go after whistleblowers in lawsuits or counterclaims to say that they improperly took documents.  These claims would make it impossible to bring a False Claims Act claim without subjecting yourself to an employment lawsuit. I agree with you, Your Honor, that many whistleblowers, while they're working inside a facility, particularly a whistleblower working inside a military facility, can't walk out of a facility with boxes of documents. So instead what they do is they make journals, like Mr. Skobik did, or they talk to lawyers. I've had whistleblowers before try to keep a file somewhere because they know that documents might disappear so that when the government goes in they can say, there's a file in this drawer somewhere that you can get to. So very often in False Claims Act cases the other problem is that, like here we have three whistleblowers with three different types of knowledge, if the standard is that you have to have an actual claim plus the details of the underlying scheme, you would have to have different types of individuals from all different parts of the facility and also taking documents in order to attach evidence to their complaint, which in hardly any circumstance are you able to do. Because, for example, here we allege that even if the exact copies of the progress payments or the final invoice were attached to the complaint, it wouldn't show the breakdown of a single part with a single amount of money like you might find in a health care case. It would be bundled. It wouldn't add any of this extra detail that I believe the Eleventh Circuit is looking for. And so what we have done is even, in my view, more reliable than, like in Klassen, attaching essentially a blatant claim. What we have done is at every step alleged why we think these nonconforming parts went from the supplier to acceptance by EB to installed on submarines and was paid by the United States. And, of course, I don't think anyone is disputing that nonconforming parts were installed on submarines in this case. Thank you. And you have two minutes left for rebuttal. Thank you, Your Honor. And we have another time sharing. Mr. Gershenhorn, you have eight minutes. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Ian Gershenhorn of the Act General Dynamics, Electric Boat. Relator's complaint is barred by a mountain of case law from this Court that implements bedrock requirements of Rule 9b. That case law requires specificity, the who, what, when, where, how, for the submission of the claim that is the core of Relator's action. Relator here may well have alleged with specificity New Flow's own fraud against Electric Boat, but this case involves allegations of a distinct fraud perpetrated by Electric Boat, which has as its centerpiece the submission of a false claim through Electric Boat's bills to the government. And as to that, Relator has provided no specificity. Why is this not different from the medical context where the government might have been billed? Whereas here, we know the Navy was billed and detail has been provided about nonconforming parts came in to the defendants, and we know the nonconforming parts were in fact installed. So a number of responses, Your Honor. First of all, what Rule 9b is about is not the question of whether we know or whether it's plausible or even whether it's certain that bills were provided. It's about whether there is specificity, whether there's the identification of particular bills. Rule 9b is not Rule 8 on steroids. It's a distinct interest that's designed to prevent opportunistic outsiders from taking advantage of allegations trying to get a quick settlement. So that's the first part. The second point, Your Honor, is in case after case, and many of them I concede are unpublished, but in case after case, this Court has applied the same rule to this context. So I point, Your Honor, to the CL-1 case, not the one that was just argued, but the CL-1 case against Lockheed, the Shurek case against Boeing. The SUBO case was against the Air Force for the creation of the F-22 stealth fighter. The Klausmeier case was against the U.S. Army Corps of Engineers, a single contract. The Shurek case against Boeing involved a contract with NASA. The Helmsley-Bethany hospice case was not a government contractor case, but it was one in which this Court said that all or virtually all of the claims were submitted for Medicare. So this Court has addressed over and again this issue, and it goes, I think, to Judge Grant's question about what if there were a 100% chance. Well, a 100% chance goes to Rule 8. We're not challenging this complaint under Rule 8. We're challenging it under 9B, and some sort of certainty that somewhere some claim must have been submitted. So do you think that an actual claim needs to be attached to a complaint in order to survive? No, Your Honor, we don't think that. This Court has said, and Judge Corrigan understood, that there were different ways to do it, that you could either attach a specific claim, give the details, the who, what, when, where, why of a claim, or you could through indicia of reliability. Well, do you think the who, what, when, where, why of a claim is different than attaching the claim? So I think that, yes, you don't actually have to attach the physical claim. You could describe it. But there's a third way. Well, I mean, does that suggest you should memorize the claim? I'm trying to figure out where the line is between, I think we all agree a claim is enough. Yes. But what is enough besides a claim? So there are two other ways. One is to describe the who, what, when, where, why, which may well duplicate the claim. But the third way is to... I'm so sorry. I want to back up. I want to try to make sure, is that different than let's say someone has a photographic memory and they can reproduce the claim.  So what counts less than that, Your Honor? So I don't want to quibble. The first two, I agree, are very similar. Whether you attach a claim or describe it in complete detail. So I agree with you, Your Honor. But there is a second bucket, which Judge Corrigan identified, which is that when you have personal knowledge of billing used to bolster specific details of submitted claims. This Court has said that over and again in cases like Sanchez and in Carroll and then again in Helmley. And what the Court has said there is if you have some specifics of the claim, this Court has allowed certain insiders, generally ones with knowledge of the billing process, to supplement those specific ideas. In this case, what specifics would have been sufficient in your mind such that we would not be up here on appeal on this issue? So, Your Honor, I think they would either need the tables of specific bills or they would need someone, generally somebody in the billing department, to describe what was required. That is what this Court has said. When you say specifics of a bill, I really want you to be, for lack of a better word, specific. Are they going to have to say the invoice that went out on March 3rd of this year, invoice number, whatever, in this amount, what kind of specificity? That would suffice, Your Honor. But, no, this Court has allowed less. And let's talk about that less. I would like to pair that with the impossibility point by making this point, which is, over and again, this Court has held, applying exactly the standard we asked for, that relators have satisfactorily alleged things without attaching specific bills. I'm pointing the Court to Walker and to Mastidge and to Matheny and to Hill. The idea that this is an impossible standard to meet is just not accurate under this Court's case law. And nor have those folks been held to this standard that is impossible to meet, right? Those cases were allowed to go forward without specific bills, but they had individuals in the billing department who could identify within narrower range. We think within these few months, we described bills that were accepted. And so I think, over and again, this Court has recognized that this test is satisfiable. I will also say, Your Honor. I'm sorry, Your Honor. So what you want to do is you want to trace from the part to the billing to the payment. You just want to trace it. So, Your Honor, that is what 9b requires, that kind of specificity. But in Hanger 1, a binding Fifth Circuit case, the Court explicitly said tracing is not required. Now, that's older than all these other cases you rely on. That's the prior panel. So if we've got a binding case that says you don't have to trace, what's different for you? Because tracing is one way, but not the only way. As I said, I don't think there was tracing in the cases of Hill and Matheny and Mastich and Walker. And the Court published cases of this Court allowed those claims to go forward. And so what we have here is a million miles from these cases. We have an outsider to the company, to the situation which, of course, has always been skeptical. It's no coincidence that all of the cases that have been allowed to go forward involve corporate insiders who have knowledge. I guess I kind of follow up on what Judge Branch said. I'm not sure you fully answered. Assume that this fraud in fact occurred the way they allege, what would they have to say in the complaint to get there? What would they have to have that they're missing? I think, Your Honor, what they would need to have is just what this Court has required, which is to tie to specific bills and invoices or otherwise supplement the specifics. I think we're looking for the otherwise. I think probably all three of us are looking for more information about the otherwise. Individuals in the billing department who can explain when bills were submitted and can give that kind of detail. So let's say that an engineer works on one particular kind of part, and he is told by his boss, you need to make this part out of aluminum instead of iron, and it's not going to work as well, but that's fine. He tells his billing contact about this, and the billing contact says, I'm not going to mess with it. I'm just going to go ahead and submit all these bills and don't get me involved in this. I have a family to take care of. I'm not involved in this. I don't care. Do you think that engineer can bring a false claim to that claim? Your Honor, I think that is closer under this Court's case law. I don't know the exact line between how specific the billing person has to say. This Court's case is— But in my hypo, there is no billing person. He wants no part of it. All we have is an engineer who is told by the billing person, I'm going to go ahead and send all these bills, even though I know that you've made the wrong part. So, Your Honor, I think more specificity than that is needed. That, to me, is similar to something like in this case where something must have been submitted between 2005 and 2015. But I think it's closer to the line in this sense. At the time the billing person said that, that person could be read to have said, at this particular moment, I am submitting this claim on this day. And to the extent that's what's allowed, to the extent that's what Your Honor's hypo means, that might well satisfy— I guess my concern is it seems like under the standard you're setting out, no matter how much knowledge someone who's not in the billing department has of fraud against the United States, there's no way for them to bring that claim unless they go trolling around the billing department to find someone else who's willing to risk their employment to bring a QI-TAM claim. So, a couple of points on that, Your Honor. First of all, I think this Court should have comfort from a case like Mastidge that that's not true. There, the person wasn't precisely in the billing department but was a senior person who knew a lot. But second, I do think that part of that is what the insight in Claussen, which is it is the submission of the claim. It is not the private fraud that creates the FCA action. It is the submission of the claim. And indeed, if I could just step back for a moment, remember in cases like Claussen and Bethany Hospice and others, what was presented was here are the particular patients, right? Here are the particular fraudulent things that were done on behalf of that patient. And we're alleging that all or most or almost all of the claims were submitted to Medicare. And what this Court said was, yes, of course that satisfies Rule 8, but it doesn't satisfy Rule 9b. It doesn't give particularity. And so this question about, you know, is this impossible to satisfy by outsiders? I mean, this is the same point that Judge Barkett made in dissent in Claussen that the Court considered, you know, the question about this is too hard. It's uniquely within the defendant's ken. And I think the reason why the Court should have particular comfort is, A, for the past two decades this has been the standard and relators have gone forward. And then, B, of course the United States always can bring these claims. The United States has all of the invoices. They did a substantial investigation here, nearly a million pages of documents. They served CIDs. They did interviews. And they coordinated with the relators here. And so I guess if I were saying to this Court, like, is this the case to stretch and change what has been settled law for two decades here? It seems to me this is just about the worst case to do that, the least sympathetic, because we have outsiders to EB making allegations. We have the United States doing a substantial investigation and sharing that information with the plaintiffs. We have the plaintiffs had three shots from Judge Corrigan, three chances before Judge Corrigan to make out allegations and failed to do so. And the one other thing that we've heard this morning, of course, is the United States does not say there's been a false claim, does not even say they have paid for nonconforming parts, does not say there's been a problem with the quality assurance, and does not say there have been any false certifications. But were there the employment consequences for someone in the billing department at your company who revealed bills? So I don't know the answer to that, Your Honor, but I do think that the cases like Hill and Walker and Mastage and Matheny all show that this can be done. This is not a situation where in the 11th Circuit all of a sudden key TAM cases have disappeared. What the 11th Circuit has done is struck an appropriate balance. What the United States and the plaintiffs... I heard, I thought, counsel for the U.S. say that you could, in response to Your Honor's question, to say that we could affirm here and just make clear there's not a rigid rule, and then there just is a disagreement. And we're comfortable with that because we don't think Judge Corrigan applied a rigid rule. So part of the concern behind 9b and the specificity requirement is to put the defendants on notice. What notice are you missing? With all of the allegations that we've gone through in the iterations of this complaint, you also have the billing. They're saying that the way the payments were billed to the government, they didn't identify specific parts. What information are you lacking that we now need for another amended complaint? Can I make two preliminary points and then answer Your Honor's question directly? First, the court has rejected the idea that the question in each case under 9b is, are the specific notice requirements by 9b beneficial to a particular defendant? Rule 9b requires particularity across the board. One of the purposes is for notice, but whether a particular case is served by notice isn't the question. Second, of course, there's a whole series of other purposes to 9b which we think are directly implicated, including the opportunistic outsider's... And to be clear, my question said one of the concerns. And so that's what I'm asking for you to answer. What we don't have here is a bill that ties to any nonconforming parts. We don't have the timing. This is a case involving red flags. Was the installation of the parts before the red flags, after the red flags, during the red flags? That's critically important. It doesn't tie the time to the quality assurance deficiencies. This is a case in which it's not knowing installation of nonconforming parts. It's supposedly knowing failure to have a quality assurance program and knowing the point in time is critical. And indeed, as Judge Corrigan found, we don't even know which version of the statute to apply because the statute was amended halfway through and there's no specificity. Are we talking about the pre-2008 version or the post-2008 version? And I think that is the kind of thing, if we were required to show notice, which, as I tried to indicate, I don't think we are. 9B says what it says, but if we were, those are the kinds of things that I think would benefit. Instead, what we have is there was fraud between 2005 and 2015, and I think this goes to, I believe it was Judge Grant, who asked the question, basically, what if the U.S. had come in after all of the investigation and filed a complaint like this? I think they would be laughed out of court, right? This kind of lack of specificity where the U.S. comes in and says, you know, doesn't even say there were false claims, doesn't say it was painted for non-conforming parts, after a seven-year investigation would not be taken seriously. And what Atkins says is the decision is no, that the standard for a private release is no less, otherwise the government could just subcontract it out, its obligations to the... You have answered this question, and by the way, that question you're referring to was mine, but that's all right. That's all right. Okay, thank you. And now Mr. Clement for Huntington Ingalls Industries, Newport News Shipbuilding Division, and you have seven minutes. Thank you, Your Honor. And may it please the Court, Paul Clement for Newport News Shipbuilding. The relater here, as to my client, is a complete outsider. They do not have a relater that has ever worked for NNS, and they are completely removed from even the EB billing department. And it may be true, Your Honors, just to get to the heart of some of the questions you were asking, it may be close to impossible for a complete outsider to plead fraud with particularity. It is no accident that the first of this Court's cases dealing with these 9B issues, Klausen, involved an outsider, and it is no accident that Judge Barquette, in her dissent, as my friend alluded to, complained that this makes it impossible for the relater there, who was an outsider. I think that is a feature, not a bug, which is to say there are real concerns in this context that particularly when you don't have somebody who's giving the government more information than it has about the fraud that was taking place for their employer, but is trying to bring in third parties that they are really strangers to and make very serious allegations about them. That is something that should not happen unless they are in a position to plead that with particularity, plead that with respect to the sine qua non of any false claim, which is the actual submission of the false claim. Do you agree or disagree with the United States that the circuit's approaches are really all pretty similar, even though we may use different words? I think at the end of the day that's right, and if you were to rule in our favor and the other side were to file a cert petition, I would be telling the Supreme Court that as well. I think this is something where the circuit could be formulated a little bit differently, but I think it comes down to the same thing. There's one thing where I would like to part company, though, with what the United States said, is they said at the end of the day the test is in dish of reliability. I don't think that's right. I mean, I think it's as simple as look at the rule. At the end of the day the test is particularity, and there are multiple different ways to prove particularity, and I think the problem here really gets down to this outsider phenomenon, and I think just an interesting thought experiment is the relators here had this journal. They probably were concerned about taking specific documents out of their workplace, just like you alluded to, Judge Grant, so they put together a journal of all the various sort of fraud that was taking place at New Flow. Now, if somebody worked inside the company in the billing department, they could have that same journal, and it would have lots and lots of detail about the various miscoding or various bills that were submitted, and they wouldn't necessarily have to attach the invoice, but that journal would give them the mechanism to plead fraud with particularity in spades, and I don't think they'd have any difficulty with it. The difficulty here really stems from the fact that they don't know the first thing, the relators here, about how EB did its billing, and they know even less about anything that happened at my client, Newport News Shipbuilding. The best fact they have going for them is they allege that there were 42 nonconforming parts on these submarines. We don't know which of those 42 parts NNS touched. We're a subcontractor on this. We're the prime subcontractor, so probability, mathematical probability, which this court has repeatedly said is not enough, probably means that some of those parts are parts that we touched, but we would have no way of knowing from this complaint which ones of those parts are parts that we touched. The other thing, and my friend alluded to this, since ultimately they have to prove particularity and they have to prove a mental state that goes with the false claim, if you think about their ultimate attempt to show some kind of knowing violation here, it's based on recklessness. That's all based on the idea that there were red flags. Now, I think this is all kind of ironic because the red flags are mostly a handful of instances when EB and NNS detected the fact that they were being defrauded by Newflow, and somehow the fact that we were paying attention and caught some of the violations put us on notice and we should have done a better job. I think that's sort of like coming into court after you've offed your parents and saying that you're an orphan and asking for sympathy. But put all that to one side. I mean, they critically depend on allegations of recklessness based on these red flags. We have no idea from this complaint where those red flags were vis-à-vis any particular claim that the government paid. That's one thing I've been wondering about, actually. Are some of the potential problems with the knowledge and falsity piece maybe overlapping into the particularity of the allegations in that there's a lack of knowledge... alleged lack of knowledge and falsity mean that it's much harder to say what both of your clients knew and when? Well, I would say at least this. When your claim, when your false claim is ultimately based on recklessness, that makes knowing and recklessness that you're going to prove by red flags, that makes the timing of the false claims even more important. If you take a case like, you know, take the Walker case, for example, where you had a nurse practitioner, if I'm remembering the right facts, you have a nurse practitioner who's being billed as a doctor, and she knows that because she doesn't even have her own, like, employee ID number for purposes of submitting bills. Like, she sort of knows that the fraud is consistent throughout the whole period. And in that case, you still ultimately particularly looks for the who, when, where, what, but the when there probably matters a little bit less because the mental state is consistent throughout the whole period. But in a case where you're trying to prove it based on recklessness, based on red flags, you really need to know when the false claim was submitted vis-a-vis those red flags. Because if it's a claim that was submitted after all of the red flags, you get a much stronger case as the plaintiff than you do if that was pointed out at the beginning of the process. One matter I'd like to get back to is the question about Judge Corrigan focusing on, is the government in or out here? Now, I think he asked that question in this case in particular because of the nature of these allegations. Obviously, the government can decide not to intervene in a false claims act and then file an amicus brief on, like, you know, the bounds of the original source doctrine or something like that. But these are very serious charges that my client and EB took very, very seriously. The idea that there may be nuclear submarines out there that are unsafe is something that somebody in the shipbuilding business cannot take anything other than deadly serious. Before we put these ships out, we have our own employees on the ships. Their first time they're submerged, we have our employees on those ships. So these challenges are... These allegations are so serious, and for the government to investigate them for years and years and then sort of decide, well, we kind of like this relator complaint to go forward, but we're not going to take it over, I think that's what he thought was irresponsible here. And just to finish on one point, if this were the United States' own case and these were the allegations, I don't think there'd be a question in the world that this isn't enough for 9b and there shouldn't be a different standard. And my question was also getting at, because the government has stayed involved in this at the district court level and certainly even opened the argument today, this information is within the knowledge of the government, and yet this information is not in... Now we've gone through multiple complaints. No, that's right, Your Honor, and that does get to Judge Grant's question about, you know, is this impossible? It may be close to impossible for an outsider, but one way that it might be possible even for an outsider is if the government's willing to give them the information about the billing. You know, I'm not going to speculate here. If I were, I would say maybe the government didn't give them that, not because they don't have them. They tell you on page 21 of their brief here that the government always has its billing records, so I think it may have had more to do with the fact that we are the defrauded party here, not the party that was defrauding everybody. But obviously, that's speculation. You have the billing records too, so with respect to the 42 parts that are actually on the submarines, you know when you billed. Maybe EB does. I mean, maybe not NNS, but one of the defendants certainly knows when they were billed and you know you got paid for them. Well, I mean, first of all, I would reinforce that maybe we actually, I mean, maybe EB would give us all the billing records, but we didn't bill the government at all, and we're here under a theory that we caused a false claim to be submitted. And so there is that disconnect here. But just to get to your point, Judge Henkel, I actually think in a weird way that proves my point, which is the reason that we could, not based on the complaint but after we saw the complaint, go in and do all the reverse engineering and figure out which bills were submitted when. The reason we can do that is because we're insiders. I mean, we have that capability. I'm not here to tell you that we just can't do that. That's beyond the ken of the accounting department or the billing department at EB. But that's not the responsibility of the defendant in a false claims act. The complaint is supposed to be brought by somebody  That's the whole theory behind the false claims act. And is your effort at reengineering hampered by the lack of the date specificity? It is, Your Honor. But even if we could reverse engineer the whole thing, I think this Court's cases have said that's not the obligation on a defendant in a false claims act case. Your brief notes that Judge Corrigan said did not hold that there are two exclusive categories approving a specific claim for Rule 9a purposes. Do you have an idea of what the third category would be? This Court has said there are no per se rules. I mean, as I've, you know, I think I've read every one of this Court's cases. And it does seem like they kind of come into those two baskets. But, you know, which is to say you either have the, you know, whether it's two baskets or not, you sort of have the attach a false claim or the who, what, when, where, how. That's kind of one basket. And then there's sort of indicia of reliability as sort of a second basket. I think there could be situations where you sort of come somewhere in between and maybe that's covered by the indicia of reliability. But I guess at the end of the day, it all seems like, you know, ultimately it's a question of particularity. I think this Court has said that there's no per se rules here. I think the one per se rule based on the text of Rule 9b is you have to plead fraud with particularity. And maybe that's going to depend a little bit on different circumstances. But, you know, the Seal I case, for example, although it's unpublished, sort of shows that you have a dynamic where just because you're in the military contracting situation, that's not just this fundamentally different set of rules or the rules aren't relaxed. Let me give you a chance to address one of my concerns about the whole area. And it kind of departs from the case law. But just looking at this as an original matter, suppose there's a case out there now where somebody is building tanks or airplanes or whatever and there's a person that's working on it and knows that they're using aluminum instead of steel or whatever. Knows this. Knows that defective parts are being provided to the United States military that may endanger the troops. That's all they know. I'm having trouble figuring out why that person should not be able to bring a key TAM case. And under the law, with respect to knowing when it was billed and so forth, it seems to me that person probably can't bring a key TAM case. So maybe we count on that person being honest and just telling the United States attorney or whoever and that will work. But the whole idea of the key TAM case was for the government to find out about that. So Judge Hinkle, obviously the technical legal reason why the hypo that you've described creates a problem under this circuit law is because this court has said, I think correctly, that the sine qua non of a false claims act is the submission of the false claim itself. I think that puts the burden on the person that you've described to at some point walk down the hall, pick up the phone, whatever it is, talk to somebody in the billing department, get at least enough from that person, even if they don't work there, to confirm that yes, this was all sort of passed through. And then I think they may have just enough to do it. I think you're right. I think you've described the law, but my question wasn't, is that the law? My question is, why should that be the law? I think it should be the law because ultimately, you know, this isn't just a sort of violate government standards statute. It requires a false claim. And so at the end of the day, you know, there is that obligation. I think the situation, I don't think it's too much of a burden or an absurd burden to make the person walk down the hall or place the phone call, talk to somebody in the billing department and get a sense that, okay, what I'm seeing here is being manifested on these bills as a claim to the government. And the person does it and gets fired. Well, I mean, they make their protections for retaliation. If you look at the facts of these cases, as, you know, I think we all have, a lot of these cases in practice  I'm not trying to minimize the protection they deserve, but I'm saying, you know, as my friend said, even this standard hasn't stopped false claims from being brought in the 11th Circuit. And one other point I would say is, you know, it is very typical in these cases for there to be a first complaint and that's filed under seal. And then maybe the government gets involved. Maybe the government does share some more information. Then there's a first amendment complaint as here often a second amended complaint. So even if that person, you know, is maybe, you know, can't quite get to particularity on the day they filed their seal complaint, I think under some circumstances they can get there. And I really think the indicia reliability test is designed for cases just like that. Thank you. Ms. Verkamp, you have two minutes remaining. Thank you, Your Honors. We'll give you a little bit of extra time, I presume, because I'm sure there are things you want to say. But isn't it true that, with respect to Judge Hinkle's last question, that Congress, I can't remember what year, but expanded whistleblower protections so that someone could get whistleblower protection even if their QTAM didn't end up going through? Yes, Your Honor. In fact, I was going to start with that hypothetical. Go for it. Yes, whistleblower protections were expanded. But maybe even more relevant, over time under the statute, the statute has been amended over time in 1986 and 2009 to strengthen the ability of whistleblowers to come forward. So my response to you, Judge Hinkle, is that a whistleblower is not required to walk down the hall to get billing information or to recruit an army of whistleblowers from every different department to button up all the evidence so that they have more evidence than the government and the defendants in order to bring a case. Rather, the False Claims Act is specifically structured to let one person, and it doesn't specify an insider. Congress could if it wanted. It could be a non-biller. It could be an outsider. They want that person, that engineer who knows they're using the wrong alloy and sees it going into final products, whether as a subcontractor and seeing it go through the primes like here because they know there was a write-off by EB and NNS accepting the products. They want that person to get to the government as soon as possible. And if it were otherwise, if they had to amass all that evidence, not only would they be prohibited by perhaps the rules of their facility or their ability to know that they could do that, walk out with boxes of documents, or fear of being fired and risking their whole lives, but the other... Doesn't a false statement provision provide an avenue for a sub-subcontractor who knows that their employer is making a false part that then eventually is billed to the government? Doesn't that provide an out there, and isn't that what happened here? That's another avenue of liability that we allege. I think you're referring to subsection A2 as amended in 2009, A1B, and that does provide that, and we allege that defendants made or used false records or caused the make or use of false records material to a claim. And in the Court's decisions in Hosper and Mastedge and in Urquia-Diaz, the Court has suggested that a different 9b standard would apply to those claims, but has not had the occasion to address it because in most cases a false statement claim is bootstrapped to a false submission claim, meaning the claim and the false statement are the same thing. Here, particularly in military cases, we list a litany of false records to include the objective quality evidence that undergirds a claim that they caused to get a claim played or material to a claim. And under those cases, the more relevant issue would be, did the fraud actually come to fruition? Was there payment? And that evidence here we would assert is strong. But the other... If I can mention this, the other thing I wanted to correct from the previous argument is that counsel said that the Navy doesn't say that the parts were nonconformant or that they paid. And in section, I believe, 7 of our complaint, we allege that they say both. So I wanted to make that correction. And then the final thing I wanted to mention is we are here today not under trial or summary judgment standards as in ACERICARE or even your more recent case of Bell v. Cross dealing with objective falsity in knowledge, but on pleading standards. And we allege actual knowledge, reckless indifference, and violation of material standards in our complaint. What about the idea that it's hard to know when you're talking about a reckless standard, that it's important to know when the claim was in relation to when the red flags appeared? Frankly, I think that there is some kind of confusion about the timing is outside the record  in the section where we lay out the timeline, we specifically talk about when the parts were made, and then we match them based on our access to documents to the point of shipment and acceptance by EB. And our complaint specifically alleges that under the payment mechanism at that point they're charged to the United States. So there's no confusion as to timing in our complaint. Rather, we plead very clear timing that over time, again and again and again, that these nonconforming parts were accepted. Not only were they accepted on a part-by-part basis, but also that no systematic correction went in. So this is the closer analogy. I forget the details of it. I think counsel made an analogy about an orphan complaining after the fact. The closer analogy would be if you were an automobile manufacturer and you fixed the same thing on a car over and over again, you would certainly be liable for what's wrong with that particular car. But also, if you never went in and told the buyers of the car that the same defect had been detected for a 10-year period, there would be additional liability for that. And here, we're not talking about a commercial carmaker. We're talking about a very intricate system of standards, of strict quality control that required objective quality evidence over time. Thank you. Thank you. Thank you all. We have the case under advisement. We are going to go into recess for five minutes. We shall return.